**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**8:17-cv-03066-MSS-TGW**

CHERYL STAPLE,

    Plaintiff/Counter-defendant,

v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Defendant/Counter-plaintiff.
_____/

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Defendant/Counter-plaintiff,

v.

ESTATE OF DESMOND H. STAPLE AND
CHERYL STAPLE,

    Plaintiff/Counter-defendants.
_____/

## DEFENDANT, NORTHWESTERN MUTUAL'S MOTION FOR RECONSIDERATION OF JANUARY 7, 2019 DISCOVERY ORDER [DE 71]

Pursuant to Federal Rule of Civil Procedure 60(b) and Middle District of Florida Local Rule 3.01(a), Defendant, The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), respectfully moves for reconsideration of the Order Denying Northwestern Mutual's Motion to Compel[1] [DE 71] (the "Discovery Order"), denying Northwestern Mutual's Motion to Compel Production of Text Messages, Emails, and Unopened Mail, and to Compel Production of

---

[1] Although the order is dated January 7, 2019, the Order was served electronically on the parties on January 10, 2019.

1

Computer and Phone Contents for Inspection [DE 49] (the "Motion to Compel").

## I. INTRODUCTION

The Discovery Order ruled, without reaching the merits of the Motion to Compel,[2] that it was untimely on the basis that the Motion to Compel the production of the computer, cell phone and mail (collectively referred to as the "Items"), did not offer any explanation for the untimeliness. The Discovery Order also stated that Northwestern Mutual's Motion to Compel could and should have been filed sooner to address confidentiality objections. Northwestern Mutual respectfully disagrees for the following reasons.

First, Northwestern Mutual could not confirm that Plaintiff's statements regarding the Florida Bar were false until it had completed its investigation and provided Northwestern Mutual with its affidavit on November 27, 2018—**12 days after the close of discovery**. Immediately after establishing that fact, Northwestern Mutual filed its Motion to Compel on December 8, 2019, despite the intervening Thanksgiving holiday. On the affidavit alone, Northwestern Mutual submits it has shown that it could not have submitted the Motion to Compel before the discovery cutoff because it had not yet received the affidavit.[3]

Further, Northwestern Mutual did request access to the Items prior to the close of discovery, which Plaintiff refused, and contacted The Florida Bar, all before the discovery cutoff. Specifically, on October 29, 2018—before the close of discovery—Northwestern Mutual conducted an in-person inspection of the contents of Mr. Staple's car in Plaintiff's

---

[2] Plaintiff, in other filings, has misleadingly implied that, because the Motion to Compel was denied, there could be no Fraud on the Court. Response to Motion to Dismiss for Fraud [DE72], at p.16 ("The Insurance Company's Motion to Compel has been denied by the Court [Doc. 71]. There were certainly no fabrications of statements by the Florida Bar, as the Insurance Company suggests."). It is precisely the Fraud on the Court and the misrepresentations of Plaintiff's counsel that caused the delay in this action.

[3] It goes without saying that no responsible attorney would accuse another member of the Bar of such a serious misrepresentation without adequate proof of same.

counsel's office and requested the Items, which Plaintiff refused to produce based on the contention that the Florida Bar had instructed them not to do so.[4] Northwestern Mutual then contacted The Florida Bar before the discovery cutoff and spoke with the person plaintiff listed as an inventory attorney (Jodi Thompson), The Florida Bar's office manager of the Tampa office (Linda Lyman), and the deputy general counsel of The Florida Bar (Rich Courtemanche).[5] Despite initiating all of these conversations with The Florida Bar before the close of discovery, The Bar had not completed its investigation until **12 days** after the close of discovery.

Second, this Court should grant reconsideration because the Discovery Order mistakenly relies on Plaintiff's misdirection by stating that Northwestern Mutual could have challenged confidentiality objections sooner. But, Plaintiff had not asserted confidentiality objections in her discovery responses—<u>there was no pending confidentiality objections for this Court to rule upon</u>. <u>See</u> Amended Responses to Request for Production [DE 49-6], Nos. 6, 7, 8, 9, 13; Amended Verified Answers and Objections to Interrogatories [DE 49-7], No. 7. A motion to compel filed any earlier by Northwestern Mutual would have been clearly premature because Plaintiff's responses state that she agrees to produce these highly probative documents and devices if "permitted" to do so by The Florida Bar. Thus, this Court's belief that Northwestern Mutual

---

[4] Plaintiff's counsel confirmed he instructed his office to deny access to the Items the following day at the Deposition of Dr. Adams. See Deposition Transcript [DE 58-5], at p.94:3-14.

[5] In the Response [DE 57], Plaintiff raised strawman arguments—not directed at the merits—including that Northwestern Mutual should have contacted an ethics call hotline attendee (Lilijean Quintiliani). On this issue and to the contrary, once Northwestern Mutual contacted the person (Jodi Thompson) that Plaintiff incorrectly disclosed as the inventory attorney (Thompson never served in that role and had been gone for 1 year, 3 months), Northwestern Mutual was directed to the deputy general counsel for The Florida Bar (Mr. Courtemanche), who conducted an internal investigation on Plaintiff's counsel's representations. It is axiomatic that, when an attorney is directed to an entity's counsel, no attorney acting within the bounds of professional conduct would continue to call employees for the entity when counsel was communicating on the entity's behalf.

should have moved to compel on objections (confidentiality) that were not actually being asserted in Plaintiff's discovery responses is a factual mistake that appears on the face of the order, warranting reconsideration.

Northwestern Mutual apologizes for any confusion on this issue resulting from its Motion, as it only raised arguments on confidentiality in an abundance of caution (as no Reply is permitted in this Jurisdiction). Northwestern Mutual respectfully submits that it should not be penalized for attempting to anticipate Plaintiff's arguments. In short, when Northwestern Mutual's anticipatory arguments are stripped away, it should be clear that Plaintiff's discovery responses were nothing more than agreement to produce documents or electronic devices for inspection once Northwestern Mutual obtained "permission" from The Florida Bar. *Why would Northwestern Mutual move to compel if Plaintiff stated in writing during discovery that she agreed to produce the documents and devices upon The Florida Bar's approval?* It wouldn't.

<u>Third</u>, Northwestern Mutual's defense of this claim for $4 million in life insurance benefits will be severely prejudiced because mail, documents related to Mr. Staple's business, Mr. Staple's text messages and communications, and Mr. Staple's internet searches all bear upon his mental state, which Plaintiff argues is the core issue in this case. The prejudice to Northwestern Mutual would be manifestly unfair because Plaintiff's denied access to these materials under a false pretense—that The Florida Bar prohibited access. We now know this was not true.

Conversely, there is absolutely no prejudice to Plaintiff or her counsel by requiring her to produce for inspection the documents and devices because (1) she agreed to produce them in

various discovery responses;[6] and (2) trial is set for a June 3, 2019 trial period (still more than four months away). These devices and documents can be inspected in mid-February 2019, leaving still four months before trial.[7]

Accordingly, Northwestern Mutual's Motion to Compel is asking this Court to order <u>what Plaintiff agreed to do during discovery</u>—produce documents and electronic devices for inspection now that it is perfectly clear that The Florida Bar never prevented access. For these reasons, this Court should reconsider its prior ruling, order Plaintiff to provide access for inspection of the mail, documents, laptop, and cell phone that Plaintiff stated it would produce in the absence of Florida Bar Instructions, and award fees in Northwestern Mutual's favor.

## II. FACTUAL BACKGROUND

The Court should first note that the Items have been in Plaintiff's possession since March 17, 2016, the day after Mr. Staple died. **Yet, Plaintiff denied their existence until September 7, 2018**, when she served a Supplemental Rule 26(a)(1) Disclosure [DE 49-5], at CM/ECF p. 11. This was six (6) months after the Items had been requested by Northwestern Mutual and two (2) years, six (6) months after Staple's death. See Defendant's Request for Production to Plaintiff

---

[6] See e.g., September 18, 2018 Amended Plaintiff's Amended Verified Answers and Objections to Northwestern Mutual's First Set of Interrogatories, No. 7 [DE 49-7] ("Plaintiff and her counsel agree to participate in obtaining permission from the Floridia [sic] Bar to permit access to any materials discoverable in either his computer or his phone."); Amended Response to Request for Production, No. 13 ("Furthermore, these materials [i.e., electronic devices] can be made available for inspection under the supervision of the Florida Bar, who has asked us to preserve these materials without disclosure absent their direction and permission."); Amended Response to Request for Production, No. 6 ("At the direction of the Florida Bar, any mail addressed to Mr. Staple was to be preserved from disclosure without the Florida Bar's prior approval. . . . .Plaintiff agrees to provide any release, if necessary, for Northwestern Mutual to obtain access to these materials. . . .").

[7] Although the Court denied a motion to strike Plaintiff's expert disclosures as untimely, the Court has extended the discovery deadline for Northwestern to conduct a deposition of two (2) of Plaintiff's five experts. See Order [DE 52]. One such deposition is set for February 5, 2019. The disclosure of the Items could likewise occur in February 2019.

[DE 49-1], at CM/ECF p. 19 (requests served March 23, 2018). With two (2) months left in discovery, it was in the Supplemental Rule 26 Disclosures that Plaintiff first asserted that The Florida Bar had instructed them not to open or produce the Items. [DE 49-5], at CM/ECF p. 11.

Importantly, throughout her discovery responses over the next eleven (11) days in September 2018, Plaintiff indicated that she agreed to produce the Items with the last discovery response served with less than two (2) months left in discovery. See e.g., September 18, 2018 Amended Plaintiff's Amended Verified Answers and Objections to Northwestern Mutual's First Set of Interrogatories, No. [DE49-7] ("Plaintiff and her counsel agree to participate in obtaining permission from the Floridia [sic] Bar to permit access to any materials discoverable in either his computer or his phone."). Of course, we now know that no such permission was necessary.

Northwestern Mutual only began to discover Plaintiff's gamesmanship on October 10, 2018, with one month left in discovery, when Plaintiff's counsel revealed for the first time that he had a cardboard box of the car's contents, *and it contained pills, a pill bottle and prescriptions*.[8] See Motion to Dismiss for Fraud on the Court [DE 54] at p.10; Email [DE 54-20]. Northwestern Mutual immediately requested an itemized list the cardboard box's contents, which Plaintiff's counsel refused to produce. Emails [DE 54-21; 54-22]. On October 23, 2018, Plaintiff's counsel finally provided a video of the contents of the automobile. [DE 54] at p. 11; Photographs [DE 54-23; 54-24]. After Plaintiff's counsel's video did not show every item in the cardboard box, Plaintiff's counsel refused to provide legible photographs of all contents. Emails [DE 54-25; 54-26].

On the same day, Northwestern Mutual learned that just the day before (October 22, 2018) Plaintiff's expert disclosed pictures of Mr. Staple's automobile (taken in March 2016) that

---

[8] This revelation is important because Plaintiff's experts use as a primary basis for their opinions (that Mr. Staple did not commit suicide) the lack of pills or pill bottles in his car.

Plaintiff's counsel had never disclosed or produced to Northwestern Mutual. See Motion [DE 54], at 14; Photographs [DE 54-4; 54-29; 54-30; 54-31; 54-32; 54-33; 54-34]. Upon seeing these belated disclosures, Northwestern Mutual became suspicious that Plaintiff had not been forthcoming in her discovery responses.[9] On October 29, 2018, during the in-person inspection of the contents of the car at Plaintiff's counsel's office, Northwestern Mutual discovered certain items, such as the handwritten note on the front seat of the car (as shown in the pictures disclosed by Plaintiff's experts on October 22, 2018, see Photograph [DE 54-34]) were missing. At this time, discovery was in full swing, including numerous depositions, and extensive travel.[10]

Through no fault of its own, Northwestern Mutual relied upon Plaintiff's counsel's statements—as officers of the court in good standing—that The Florida Bar had given some sort of instruction that supervision and approval was needed from The Florida Bar. Plaintiff's counsel's denial of access, after waiting months to admit the existence of the Items, was under

---

[9] It cannot be overstated how Plaintiff's experts relied on the contents of the car (from the cardboard box) and the photographs of the car taken in Plaintiff's driveway, all of which were in their possession before Northwestern Mutual's first request for production. Yet, Plaintiff did not reveal them until late October 2018—when there was less than three weeks left in discovery.

[10] Northwestern Mutual was not sitting idly by. Importantly, for this Court's reference, Plaintiff's counsel deposed defense witnesses on September 26, 2018, September 27, 2018, and September 28, 2018, in Wisconsin.

Northwestern Mutual traveled to Tampa and investigated the contents of the box in Plaintiff's counsel's office on October 29, 2018. Also on October 29, 2018, Northwestern Mutual deposed Chief Forensic Toxicologist, Julie Pierson.

On October 30, 2018, Northwestern Mutual deposed Plaintiff's expert, Dr. Adams. Also on October 30, 2018, Northwestern Mutual then flew to Denver, Colorado, to prepare Dr. Heard for deposition taken by Plaintiff on Thursday, November 1, 2018.

On Monday, November 5, 2018, Northwestern Mutual deposed Plaintiff's expert, Dr. Lenchus. On Tuesday, November 6, 2018, Northwestern Mutual deposed Plaintiff's expert, Dr. Gerrish. Notably, Plaintiff's experts were deposed in November 2018 because Plaintiff (without objection from Northwestern Mutual [DE 39], ¶6) was permitted an extension until October 15, 2018 to serve expert reports, leaving only one month for expert depositions.

On Monday November 12, 2018, Northwestern Mutual deposed Dr. Baker. On Tuesday, November 13, Northwestern Mutual deposed both EMTs Owens and Caron. On November 15, 2018, Northwestern mediated this case with Mediator Alvarez. On November 16, 2018, Northwestern Mutual deposed Plaintiff.

7

the false pretense of The Florida Bar instructions. Thus, should the Items not be produced, Plaintiff stands to benefit from her own concealment and misrepresentations.

### III.  MEMORANDUM OF LAW

**A.  Legal Standard**

The Middle District has articulated the standard for reconsideration, as follows:

> The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." U.S. v. Edler, Case No. 13–60168–CR, 2013 WL 4543695, at *1 (S.D. Fla. Aug. 27, 2013) (quotations omitted). "Only three major grounds generally justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Id. (quotations omitted).

Berman v. Kafka, 3:13-CV-1109-J-JBT, 2014 WL 12616995, at *1 (M.D. Fla. Oct. 20, 2014) (vacating its prior order because it is based on a factual error). Here, this Court's denial based on untimeliness is based on two factual inaccuracies crucial to this Court's ruling: (a) that the circumstances do not demonstrate good cause for a motion to compel filed after the discovery cutoff, and (b) that Northwestern Mutual could have moved to compel on confidentiality objections sooner. Moreover, reconsideration is proper here because manifest injustice is present as Plaintiff's misrepresentations and misdirection prevented inspection of the Items—Plaintiff should not stand to benefit from her own wrongful conduct.

**B.  Northwestern Mutual presented evidence with the Motion to Compel that The Florida Bar Confirmed Plaintiff's Misrepresentations Only After the Discovery Cutoff.**

Northwestern Mutual provided an affidavit, dated November 27, 2018, from The Florida Bar confirming Plaintiff's counsel fabricated instructions given by The Florida Bar. See Affidavit [DE 49-8]. No attorney—in regular practice—would file a motion alleging that another attorney committed such misconduct without sworn proof. Northwestern Mutual

sensibly waited until The Florida Bar finished its investigation and provided proof for this Court before filing the Motion to Compel—this was evidence in the Motion to Compel that Northwestern Mutual could not have moved to compel until after the discovery cutoff. Northwestern Mutual respectfully submits that uncovering opposing counsel's misrepresentations, which were not true as sworn by The Florida Bar, without more, should constitute good cause to compel disclosure of the documents, mail, cell phone, and laptop in a motion filed after the discovery deadline.

**C. Northwestern Mutual Acted Diligently in Seeking to Uncover the Truth and Provide Proof in Support of a Motion to Compel.**

As set forth above, Northwestern Mutual contends that the affidavit alone reveals that the investigation was completed after the discovery cutoff. Should this Court require additional factual background of the timing of Plaintiff's misrepresentations and the investigation, Northwestern Mutual respectfully submits that this Court consider the additional factual circumstances set forth in this motion to find that Northwestern Mutual acted diligently in seeking to uncover Plaintiff's misrepresentations (in addition to the facts set forth above):

- Plaintiff's disclosed the cell phone and laptop in September 2018, six months after Northwestern Mutual requested these devices and after Plaintiff possessed them long before discovery began;
- Plaintiff's discovery responses in September 2018 include agreement that Plaintiff will provide access to the Items upon complying with The Florida Bar;
- Plaintiff revealed in October 10, 2018—with one month left in discovery—that it possessed the contents of the car;
- On October 22, 2018—with three weeks left in discovery—Plaintiff's experts disclosed photographs of the car provided by Plaintiff's counsel that Plaintiff's counsel never disclosed in discovery;
- On October 23, Plaintiff's counsel, after having refused to provide an itemized list of the contents of the box, sent a video, which still did not show the full contents of each item;
- On October 29, 2018, at a visit to Plaintiff's counsel's office to

9

- inspect the contents of the car, Plaintiff's counsel admittedly instructed his office to deny access to the cell phone and laptop, which was based on the false premise that The Florida Bar instructed him to prohibit access;
- On November 8, 2018, before the discovery cutoff, Northwestern Mutual attempted to contact The Florida Bar to obtain permission to access the Items;
- As set forth in the facts above, The Florida Bar's investigation involved communicating with the prosecuting attorney (Jodi Thompson), the office manager of The Tampa Office (Linda Lyman), and The General Counsel (Rich Courtemanche); and
- On November 27, 2018, after the discovery cutoff, The Florida Bar completed its investigation and confirmed with proof that Plaintiff's very specific instructions and representations in the discovery responses were not true.

Northwestern Mutual should not be prejudiced for Plaintiff's concealment of the Items from the inception of this litigation until September 7, 2018, when they finally disclosed they possessed the Items, and their subsequent intentional misdirection. The Florida Bar affidavit [DE 49-8] submitted to this Court in support of the Motion to Compel clearly confirms (a) that the investigation was completed <u>after</u> the close of discovery (thus, the Motion to Compel could not have been filed earlier); (b) that The Florida Bar had no objection to Northwestern Mutual's discovery requests; and (c) The Florida Bar never gave the instructions Plaintiff's counsel inserted in discovery requests.

Accordingly, Northwestern Mutual respectfully requests this Court reconsider the Discovery Order and order Plaintiff to comply with the agreement in her discovery responses that she would produce those documents, mail, laptop, and computer for inspection now that it is perfectly clear that The Florida Bar issued no such instructions and that The Florida Bar does not object to disclosure and inspection of those documents and devices.

**D. The Discovery Order's Reliance On the Confidentiality Argument to Deny The Motion to Compel Was Error on the Face of the Order.**

The Discovery Order was mistaken on Northwestern Mutual's ability to challenge

Plaintiff's "confidentiality" objections sooner. To be clear, Plaintiff did not actually assert a confidentiality objection in any of the responses to discovery requests Northwestern Mutual challenged in the Motion to Compel—thus, the Court should not have relied on it as a reason that Northwestern Mutual could have moved to compel earlier. For example, in response to the request seeking mail, Plaintiff objected based solely on The Florida Bar's statements (which were later found out to be false), as follows:

> RESPONSE: <u>At the direction of the Florida Bar, any mail addressed to Mr. Staple was to be preserved from disclosure without the Florida Bar's prior approval</u>. Plaintiff has provided a copy of each envelope addressed to Mr. Staple and/or all documents directed to any company owned by Mr. Staple, to enable Northwestern Mutual to act on any of these pieces of mail to obtain permission to access these materials. Plaintiff agrees to provide any release, if necessary, for Northwestern Mutual to obtain access to these materials. See attached.

<u>See</u> Amended Response to Request for Production No. 6.[11] In response to the request seeking Staple's voicemails, emails, and text messages, Plaintiff wrote:

> RESPONSE: Plaintiff has previously provided all known mobile or landline phone numbers for Mr. Staple, together with the service provider's name and detailed billing statements for relevant time periods in her Rule 26 Disclosures. Moreover, Defendant has requested records from multiple third parties regarding these communications.

<u>See</u> Amended Response to Request for Production No. 8. In response to the request for forensic inspection/duplication of the computer(s), including any internal or external hard drives or other data storage devices, cellular phones, and tablets that Desmond Staple used, Plaintiff responded:

> RESPONSE: Plaintiff has possession of a laptop computer and a mobile phone, both of which are preserved in a fire proof safe maintained by Plaintiff's counsel. <u>Furthermore, these materials can be made available for inspection under the supervision of the</u>

---

[11] Response to Request for Production No. 7 is the same and is part of the Motion to Compel, but pertains to documents, not mail.

> Florida Bar, who has asked us to preserve these materials without
> disclosure absent their direction and permission. The identity of
> individuals from the Florida Bar with whom Plaintiff's counsel has
> discussed these matters were provided in her Rule 26 Disclosure,
> and Plaintiff agrees to cooperate with both Northwestern Mutual
> and the Florida Bar to permit access to these materials.

See Amended Response to Request for Production No. 13.

To be certain, Plaintiff and her counsel's discovery responses do not raise any raise any objection on any basis other than Plaintiff and her counsel's purported inability to produce the mail, documents, cell phone, or computer because The Florida Bar said not to. Thus, contrary to the Court's footnote, Northwestern Mutual could not have raised these challenges or challenged the confidentiality objection sooner to get the mail until Northwestern Mutual could conclusively put to rest Plaintiff's misrepresentations.

Northwestern Mutual respectfully submits that its arguments on "confidentiality" were provided to aid the Court by showing that even if Plaintiff asserted some type of objection on that basis in Response to the Motion to Compel (to which Northwestern Mutual would not be entitled to Reply), it would be unavailing. Accordingly, Northwestern Mutual specifically stated: "***even if*** the mail contained some other party's confidential information . . . ." Motion to Compel [DE 49], at 6. This "in the alternative" argument about confidentiality was clearly not the thrust of the Motion to Compel. Thus, this Court should reconsider its prior ruling denying the Motion to Compel based on Northwestern Mutual's "failure" to challenge an objection sooner (confidentiality) when the objection was not being raised, challenged, or at issue.

Practically, Northwestern Mutual has no way of knowing what might be confidential—Plaintiff never produced the mail, the phone, or the laptop. Plaintiff never provided a privilege log. For this reason, Northwestern Mutual should not be penalized for not challenging a potential confidentiality objection that was not being asserted by Plaintiff at that time.

**E. The Only Reference to Misrepresentations about Confidentiality is in Plaintiff's Supplemental Rule 26 Disclosures filed 6 Months into Discovery, not Objections to Requests for Production.**

After Plaintiff began amending her discovery responses in September 2018, the only place confidentiality shows up in the Motion to Compel is in Plaintiff's Supplemental Rule 26(a)(1) Initial Disclosures, where Plaintiff states that The Florida Bar asserts confidentiality:

> The device is currently preserved in a fire proof safe controlled by counsel for Cheryl Staple. As this was a cellular phone of an attorney, upon instructions of the Florida Bar, this device may not be opened by any party, due to confidentiality rules.

See Plaintiff's Supplemental Rule 26(a)(1) Disclosures [DE 49-5], at 11.

As set forth above, Plaintiff was not seeking to shield individual's communications or assert a confidentiality objection, but to shield all communications by preventing "opening the device." According to Plaintiff, this came from an "instruction" of The Florida Bar. Northwestern Mutual could not have challenged a prohibition against opening the device until Northwestern Mutual debunked Plaintiff's misrepresentations.

**F. The Motion To Compel Should be Granted on The Merits, Ordering Plaintiff to Produce what She Agreed to Produce.**

Northwestern Mutual has stripped away all "alternative" or reply arguments and requests this Court order Plaintiff to produce precisely what she agreed to produce. Plaintiff concocted a smokescreen that, in order to access mail, documents, the cell phone, or the laptop in her possession, some sort of compliance with The Florida Bar was required. The smokescreen was conclusively debunked by The Florida Bar after the discovery cutoff. The Florida Bar issued no such instructions to Plaintiff, [DE 49-8] at ¶¶3-4, and did not and does not object to production of what Plaintiff's counsel agreed to produce, [DE 49-8] at ¶6. Therefore, on reconsideration, this Court should order production/inspection on Request for Production Nos. 6, 7, 8, 9, 13.

## IV. PREJUDICE TO NORTHWESTERN MUTUAL IS MANIFEST AND UNFAIR, WHICH CAN BE CORRECTED ON RECONSIDERATION

If the Discovery Order stands, the prejudice to Northwestern Mutual is manifest, and Plaintiff and her counsel are benefitting from their own misconduct. Once Northwestern Mutual attempted to untangle Plaintiff's web, it was too late, as it took The Florida Bar 18 days to conclude their internal investigation. Northwestern Mutual immediately filed its motion the following week. This Court should disregard Plaintiff's arguments regarding timeliness because *Plaintiff's arguments are, stated another way, that Northwestern Mutual should have learned sooner that Plaintiff was fabricating The Florida Bar's instructions about discovery in this case*. This line of argument is patently unfair and would lead to a manifestly inequitable result. Plaintiff's actions, here, have denied Northwestern Mutual access to evidence that sheds light on the truth, and Northwestern Mutual is entitled to a full picture of the evidence to support its defenses.

For example, Northwestern Mutual has been deprived of Mr. Staple's communications with family, friends, and colleagues in the weeks leading up to his passing. Plaintiff has prevented access to mail which undoubtedly would have provided additional information as to Mr. Staple's financial state, his purported restaurant dealings, the subsequent bar complaints against Mr. Staple, and many other factors (whether known or unknown) that would shed light on the stress he was suffering.

Similarly, Mr. Staple's phone and computer searches would elucidate what he was thinking at the time, and shed light on the critical mental status. Very clearly, the possibility of any searches related to Tylenol or acetaminophen, overdosing or suicide, and messaging related to suicide attempts, and suicide prevention/hotlines, would shed light on the intent behind his actions in the days leading up to his overdose. Northwestern Mutual has no way of knowing

14

what Mr. Staple himself said or what he searched for without access to these devices.

Conversely, Plaintiff would suffer absolutely no prejudice by ordering compulsion of these documents and devices for inspection because Plaintiff agreed they could be produced. Plaintiff's only possible argument in opposition is that there was delay, which Plaintiff created, first, by failing to disclose the Items and then by denying access to them on false pretenses. Plaintiff will not have to locate the electronic devices—they have been in the safe for many months, if not years (and were never in The Florida Bar's possession, only in Plaintiff's possession). Plaintiff will not need to pour through documents or search high and low—the mail is in a box in Plaintiff's counsel's safe. The time associated with accessing these devices and information is minimal. One would think that a Plaintiff so sure that Mr. Staple did not commit suicide would not fear the production of such evidence. Clearly, that is not the case.

Finally, it is not anticipated that Court's schedule will not be impacted by the inspection Northwestern Mutual requests. A complete forensic examination could occur in February 2019, leaving still four months before trial.

These are the precisely circumstances where reconsideration is warranted to prevent manifest injustice to a party who was misled.

### V. THE CASE MANAGEMENT ORDER GIVES THIS COURT DISCRETION TO HEAR THE INSTANT MOTION.

As this Court recognized in the Discovery Order, the Case Management and Scheduling Order [DE 23], at ¶ I.D. provides this Court discretion to adjudicate the merits of the Motion to Compel even though it was filed after the discovery cutoff. Indeed, instead of requiring this Court to deny motions to compel that are filed after the discovery cutoff, the Order permits the Court to exercise discretion by stating that the Court "may" deny motions as untimely. Northwestern Mutual respectfully submits that the circumstances surrounding the instant Motion

to Compel are a paramount example of when this Court should exercise its discretion and rule on the merits because, despite Northwestern Mutual's attempts to inspect the Items and obtain permission before the discovery cutoff, Northwestern Mutual did not have conclusive proof that Plaintiff's sole reason for denying access to the Items was false until The Florida Bar concluded its investigation and provided an affidavit after discovery ended.

## VI. CONCLUSION

For the foregoing reasons, Northwestern Mutual respectfully requests this Court reconsider the Discovery Order, grant the Motion to Compel, and order Plaintiff's counsel to produce the mail and documents, make the cellular phone and laptop available for forensic inspection, and grant such other and further relief as the Court deems proper.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Attorneys for The Northwestern Mutual*
*Life Insurance Company*
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel: (305) 358-6300
Fax: (305) 381-9982

By: */s/ John E. Meagher*
   John E. Meagher
   Florida Bar No. 511099
   jmeagher@shutts.com
   Jake Monk
   Florida Bar No. 100321
   jmonk@shutts.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2019, I filed the foregoing document with the Clerk of Court. I also certify that the foregoing document is being served this day on all counsel

of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via US Mail, an authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                          */s/ John E. Meagher*
                                                          Of Counsel

## SERVICE LIST

| | |
|---|---|
| Theodore A. Corless, Esq. | Timothy W. Weber, Esq. |
| Mary Catherine Lamoureux, Esq. | Jeremy D. Baillie, Esq. |
| Corless Barfield Trial Group, LLC | Weber, Crabb & Wein, P.A. |
| 6812 W. Linebaugh Ave. | 5453 Central Avenue |
| Tampa, FL 33625 | St. Petersburg, FL 33710 |
| service@corlessbarfield.com | timothy.weber@webercrabb.com |
| tcorless@corlessbarfield.com | jeremy.bailie@webercrabb.com |
| mlamoureux@corlessbarfield.com | *Co-counsel for Plaintiff* |
| *Counsel for Plaintiff* | |

Served by CM/ECF

MIADOCS 17592403 7