**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**8:17-cv-03066-MSS-TGW**

CHERYL STAPLE,

     Plaintiff/Counter-defendant,

v.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

     Defendant/Counter-plaintiff.

_____/

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

     Defendant/Counter-plaintiff,

v.

ESTATE OF DESMOND H. STAPLE AND
CHERYL STAPLE,

     Plaintiff/Counter-defendants.

_____/

**NORTHWESTERN MUTUAL'S MOTION TO PERMIT INSPECTION OF THE
ORIGINAL LIFE INSURANCE POLICIES IN PLAINTIFF'S POSSESSION OR, IN
THE ALTERNATIVE, TO REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF
ALLOWING INSPECTION OF THE ORIGINAL POLICIES**

Defendant, The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"),

pursuant to Local Rule 3.01, respectfully moves this Court for an order directing Plaintiff to

make available for inspection the Original Policies in her possession by March 20, 2020, or, in

the alternative, reopening discovery for the limited purpose of permitting inspection of the

Original Policies.

1

## I.  Motion to Allow Inspection

Plaintiff has in her sole possession the original Life Insurance Policies (the "Original Policies"), which are the subject of her lawsuit.  Northwestern Mutual has offered to go to Plaintiff's counsel's office (avoiding any inconvenience to Plaintiff and her counsel) and has requested only that the Original Policies be produced during the inspection, but Plaintiff's counsel refuses and is attempting to delay review of the Original Policies until April 2020. Northwestern Mutual submits that this Court should allow inspection of the Original Policies without delay, due to Plaintiff's recent claim in her summary judgment papers the policies attached to her Complaint are not the Original Policies, but instead copies of replica policies she received from Northwestern Mutual after Mr. Staple's death and prior to her filing this litigation. As explained below, Plaintiff's new claim is of critical importance to Northwestern Mutual's rescission action and necessitates the examination of the Original Policies.

On January 6, 2020, in Plaintiff's Motion for Summary Judgment, she argues that there is "no record evidence" that the 990 Application was attached to the 990 Policy when Mr. Staple received the 990 Policy.  Plaintiff's Motion [DE 174], at p.22 ("There is simply no evidence the Insurance Company ever provided the 990 Application to the Decedent Insured at the time of issuance of the 990 Policy.").  Plaintiff offers this argument in an attempt to avoid Northwestern Mutual's Renewed Motion for Summary Judgment seeking rescission of the $3 Million 990 Policy due to Desmond Staple's material misrepresentations in the 990 Application, including his failure to disclose that he was no longer a medical malpractice attorney because he had been disbarred.  In its initial Motion for Summary Judgment [DE 62], filed in December 2018, Northwestern Mutual countered Plaintiff's claim that Mr. Staple "never received the 990 Application" by pointing out that Plaintiff, herself, attached the Original Policies to her

Complaint, as Exhibits "A" through "D." In her opposition to the initial Motion, Plaintiff did not

dispute that she had attached the Original Policies, but, instead, argued that the application was

completed "improperly" and, therefore, Northwestern Mutual's rescission action was barred

because it "did not send Mr. Staple the application for review so he could never have known

what was recorded on that application." [DE 81], p.25. Accordingly, what Mr. Staple received

is of great importance to this case, as Plaintiff cannot complain that Mr. Staple never had an

opportunity to review the application if, in fact, it was contained in the Original Policies.

In her February 5, 2020 Opposition to Northwestern Mutual's Renewed Motion for

Summary Judgment, however, Plaintiff presents a new claim: That the policies attached to her

Complaint were <u>not</u>, in fact, the Original Policies, but were <u>copies</u> of the Original Policies that

Plaintiff's counsel requested and received pre-suit from Northwestern Mutual by Plaintiff's

counsel. Plaintiff's Opposition [DE 194], at p.50, n.14 ("The notion that the 990 Policy with

alleged application is attached to Staple's Complaint does not change the discussion. <u>Pre-suit</u>

<u>and before the true facts were learned in discovery, Staple requested a [sic] copies of the policies</u>

<u>from the Insurance Company **and those were attached to the Complaint.**</u> See letter from the

Insurance Company dated May 23, 2016 herein as Exhibit 'H'." (emphasis added)). In making

this new statement of fact, Plaintiff implies that, despite the fact that the 990 Application is

contained in the 990 Policy attached to her Complaint, it was not included in the Original Policy

he received when the policy was issued.

Plaintiff's new claim, however, is demonstrably false. The referenced letter makes clear

that a "replica" of the Original Policies was being sent to Plaintiff, stating "Enclosed please find

**replicas** of the policies you requested." (emphasis supplied). As stated in the attached

Declaration of Gordon Reistad, when Northwestern Mutual produces a "replica" policy, it marks

it as such, typing the word "**REPLICA**" on the cover and last pages and stamping "COPY" over

the company signatures on the first page.  Declaration of Gordon Reistad, attached as **Exhibit 1**,

at ¶4.  <u>All</u> of these marking appear on the Replica 990 Policy produced to Plaintiff's counsel.  In

fact, a copy of the Replica 990 Policy was kept in the claim file and produced to Plaintiff in the

litigation.  <u>See</u> Northwestern Mutual's Response to Plaintiff's First Request for Production,

Bates no. 1005-1042, attached as **Exhibit 2**.  Here is the cover page of the Replica 990 Policy

that was sent to Plaintiff's counsel:



The words "REPLICA" AND "COPY" are easily seen on the replica policy.  An examination of

the policies attached to Plaintiff's complaint, however, reveals that <u>they</u> <u>contain</u> <u>no</u> <u>such</u>

markings. Accordingly, Plaintiff's statement that the copies received from Northwestern Mutual

"were attached to the Complaint," simply is not true – and Plaintiff knows it.

At deposition she testified that it was she who received the Original Policies from

Northwestern Mutual:

> Q Did you receive these policies in the mail?
>
> A Yes.
>
> Q And did you keep them in a folder at your house?
>
> A Yes.
>
> Q Do you have, like, a small home office?
>
> A Yes.
>
> Q And were these placed in, what, the Northwestern Mutual or life insurance folder? How was the folder described?
>
> A He sent them -- Aubrey Rosser sent them in a folder already.
>
> Q And you would put the folder in your filing cabinet; is that correct?
>
> A I just put it on the bookcase.

Plaintiff's Deposition [DE 58-12], 75:18-76:10. Accordingly, Plaintiff currently has possession

of the Original Policies (unless they have been destroyed, which is another reason Northwestern

Mutual needs to see the Original Policies).

Appearing to recognize that she may have gone a "bridge too far" in telling the Court she,

in fact, attached the Replicas, rather than the Original Policies, to her Complaint, Plaintiff, in her

February 24, 2020 Reply in Support of Plaintiff's Motion for Summary Judgment, attempts to

backtrack on that statement (while still attempting to leave the false impression that, in fact, that

was the case), now stating that the receipt by Plaintiff of the replicas only "suggests" they were

attached to the Complaint.  As Plaintiff states there:

> The record before this Court demonstrates that, after the Decedent Insured's death, counsel for the Plaintiff requested a complete copy of the 990 Policy and was furnished same by the Insurance Company on May 23, 2016, prior to filing of the complaint in this action.  Thus, the argument that attachment of the policy to the complaint is proof of compliance with section 627.408 is unavailing. [FN 3] The fact that counsel requested a complete copy of the policy from the Insurance Company suggests the opposite conclusion."

Plaintiff's Reply in Support of Summary Judgment [DE 221], at 13-14 & n.3 (citations omitted) (emphasis added).  Of course, even that "suggestion" is untrue, as the absence of the necessary "**REPLICA**" and "COPY" markings on the Complaint Exhibits establishes that it was Original Policies that were attached.

Now, at the eleventh hour, after a meet and confer, Plaintiff has filed an errata, attempting to walk back this serious misrepresentation in footnote 14 of her Opposition to Northwestern Mutual's Motion for Summary Judgment.  See Errata [DE 222].  She claims that her bold factual assertion that Replica policies were attached to the Complaint was an inadvertent mistake.  In her errata, Plaintiff refuses to admit that the policies attached to the complaint were the Original Polices, but instead, skirting the issue, asserts that the attachments to the Complaint "were copies of the policies in possession of Staple and provided to counsel to attach to the Complaint."  Thus, to be clear, this errata does not obviate the need for inspection of the Original Policies because Plaintiff still apparently stands by her position that Northwestern Mutual cannot prove Mr. Staple and Plaintiff received the Original Policies.

If Plaintiff will not tell this Court with candor that the Policies attached to the Complaint are the Original Policies, then Northwestern Mutual should be allowed to inspect the Policies in Plaintiff's possession without delay, so that they can be compared to the policies attached to the

Complaint and the Replica Policies produced pre-suit.

It goes without saying that Plaintiff and her counsel have in their possession both the Original <u>and</u> Replica Policies.  Allowing Northwestern Mutual to come to Plaintiff's counsel's office to inspect the Original Policies would seem a simple matter.   In refusing to allow the inspection, Plaintiff has offered no reason for doing so, other than the pretrial "meet and confer" meeting is not due until April 13.  Of course, that meeting has absolutely nothing to do with Northwestern Mutual's request.  Obviously, Plaintiff simply is attempting to delay the inevitable, hoping that the record will remain distorted while the pending cross-motions for summary judgment are being considered by the Court. There can be no better example of the fox guarding the hen house than this case, where Plaintiff possesses the evidence, asserts the evidence is deficient in some way, asks the Court to rely on Plaintiff's interpretation of the evidence, and then refuses inspection of the evidence to thwart the adversarial process.

## II.  Motion, in the Alternative, to Reopen Discovery for Limited Purpose of Inspecting the Original Policies.

Northwestern Mutual anticipates that Plaintiff will argue that "discovery is closed." While Northwestern Mutual disagrees that this is a "discovery" matter, assuming *arguendo* it is, Northwestern Mutual respectfully requests this Court reopen discovery for the limited purpose of conducting an inspection of the Original Policies at Plaintiff's Counsel's office by Friday, March 20, 2020.  When considering whether to reopen discovery for a limited purpose, courts consider the following "relevant" factors":

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

Sears v. Carrier Corp., 3:07-CV-005-J-25JRK, 2008 WL 11334982, at *4 (M.D. Fla. Sept. 10, 2008) (reopening discovery for limited purpose); Brown v. JSS Vivint Solar, Inc., 8:18-CV-2838-T-24, 2019 WL 7020115, at *2 (M.D. Fla. Dec. 20, 2019) (granting motion to reopen discovery following review of summary judgment briefing).[1]

Regarding the first factor, trial is set in the first week of June 2020 Northwestern Mutual does not anticipate that trial will be delayed due to reopening discovery for the limited purpose of inspecting the Original Policies.

Regarding the second factor, Plaintiff opposes Northwestern Mutual's inspection before April 2020, presumably because the inspection will confirm that the Original Policies are in Plaintiff's possession and that, therefore, at the Summary Judgment stage, the 990 Policy will be rescinded. To be clear, however, Plaintiff acknowledges that Northwestern Mutual will have an opportunity to inspect the trial exhibits, which Plaintiff has agreed to in April 2020. Thus, Plaintiff's sole reason for denying inspection is to prevent the Court from considering the Original Polices at the Summary Judgment stage.

Regarding the third factor, Plaintiff will not be prejudiced because (a) there will be no delay in resolution of the Motions for Summary Judgment and therefore no delay in the trial date because Northwestern Mutual does not seek to re-file its dispositive motions—only to supplement its Reply, if warranted, and (b) Northwestern Mutual has expressly limited the inspection to the Original Policies. Conversely, Northwestern Mutual will suffer prejudice if it is unable to correct misstatements in Plaintiff's summary judgment filings.

---

[1] Unlike the case in Brown, Northwestern Mutual does not request that the Motions be denied to refile. Instead, in the interest of judicial economy, Northwestern Mutual will request leave to file a brief supplement to its Reply in Support of Summary Judgment following the inspection of the Original Policies.

Regarding the fourth factor, Northwestern Mutual has been diligent in pursuing discovery. To date, Northwestern Mutual has not needed to inspect the Original Policies because Plaintiff admitted receipt of the Original Policies, copies of the Original Policies were attached to the Complaint, the policies are disclosed in Plaintiff's Rule 26 Initial Disclosures, and Plaintiff never disclaimed the existence of the Original Policies' contents until her filings in 2020, months after discovery closed.

Regarding the fifth and sixth factors, Northwestern Mutual does not anticipate needing further discovery – unless the Original Policies have been altered or destroyed — the Original Policies are the only documents that need to be inspected. However, the Original Policies are relevant evidence because Plaintiff disputes their contents, despite having them in her sole possession.

## III. Conclusion

WHEREFORE, Northwestern Mutual respectfully submits that, with summary judgment motions pending, there is an exigent need to allow inspection of the Original Policies in Plaintiff's possession at the earliest date possible. Accordingly, Northwestern Mutual respectfully requests that Plaintiff be ordered to allow inspection on or before Friday, March 20, 2020, and, if necessary, for discovery to be opened for this limited purpose and for such other and further relief as this Court deems appropriate.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Attorneys for The Northwestern Mutual*
*Life Insurance Company*
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel: (305) 358-6300
Fax: (305) 381-9982

By: */s/ John E. Meagher*
John E. Meagher
Florida Bar No. 511099
jmeagher@shutts.com
Jake Monk
Florida Bar No. 100321
jmonk@shutts.com

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that he conferred with counsel for Plaintiff via email on February 28, 2020, and Plaintiff's counsel indicated on March 3, 2020, that he opposes the relief sought herein.

*/s/ Jake Monk*
Of Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2020, I filed the foregoing document with the Clerk of Court.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via US Mail, an authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ John E. Meagher*
Of Counsel

10

## <u>SERVICE LIST</u>

Theodore A. Corless, Esq.
Mary Catherine Lamoureux, Esq.
Corless Barfield Trial Group, LLC
6812 W. Linebaugh Ave.
Tampa, FL 33625
*service@corlessbarfield.com*
*tcorless@corlessbarfield.com*
*mlamoureux@corlessbarfield.com*
*Counsel for Plaintiff*

Timothy W. Weber, Esq.
Jeremy D. Baillie, Esq.
Weber, Crabb & Wein, P.A.
5453 Central Avenue
St. Petersburg, FL 33710
*timothy.weber@webercrabb.com*
*jeremy.bailie@webercrabb.com*
*Co-counsel for Plaintiff*


Served by CM/ECF