**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CHERYL STAPLE,**

     **Plaintiff,**

**v.**                                     **Case No: 8:17-cv-3066-T-35TGW**

**NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,**

     **Defendant.**
_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Sanctions for Plaintiff's Newly Discovered Discovery Violations, or, in the Alternative, to Compel Cheryl Staple's Previously Undisclosed Cell Phones, and to Reopen Discovery, (Dkt. 134), and the response in opposition thereto, (Dkt. 150); Defendant's Motion for Sanctions for Spoliation of Evidence, (Dkt. 170), and the response in opposition thereto, (Dkt. 186); and Defendant's Motion for Leave to File Reply to Motion for Sanctions (Dkt. 196), and the response in opposition thereto. (Dkt. 198) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **ORDERS** that Defendant's Motion for Sanctions for Plaintiff's Newly Discovered Discovery Violations, or, in the Alternative, to Compel Cheryl Staple's Previously Undisclosed Cell Phones, and to Reopen Discovery, (Dkt. 134), is **DENIED**, Defendant's Motion for Sanctions for Spoliation of Evidence, (Dkt. 170), is **DENIED**, and Defendant's Motion for Leave to File Reply to Motion for Sanctions, (Dkt. 196), is **DENIED**.

This dispute concerns the denial of Plaintiff's claim for life insurance benefits. On

March 8, 2019, after a lengthy hearing, this Court reopened discovery to allow Defendant to inspect the laptop, cell phone, and mail of the insured—Plaintiff's deceased husband Desmond Staple ("Mr. Staple")—and take a second deposition of Plaintiff's experts and other individuals who were involved in cleaning out Mr. Staple's car after his death. (Dkt. 94) During the re-opened discovery period, Defendant also took the deposition of witnesses concerning text messages it discovered on Mr. Staple's cell phone as well as their communications with Plaintiff.

At the conclusion of the seven-month re-opened discovery period, Defendant filed two motions for sanctions: the first based on Plaintiff's alleged discovery violations, newly revealed during the re-opened discovery period and the second based on Plaintiff's alleged spoliation of evidence in this case. As a remedy for both, Defendant ultimately seeks dismissal of this case with prejudice. For the reasons that follow, Defendant's motions for sanctions are due to be **DENIED**.

## I.   LEGAL STANDARD

### A.  Discovery Violations

Defendant seeks sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent power. Rule 37 governs sanctions available for certain discovery violations. Fed. R. Civ. P. 37(b)–(d). The Eleventh Circuit has explained that although Rule 37 confers upon district courts broad discretion to fashion appropriate sanctions for the violation of discovery orders, this discretion is not unbridled. United States v. Certain Real Prop. Located at Route 1, Bryant, Ala., 126 F.3d 1314, 1317 (11th Cir. 1997). "The decision to dismiss a claim or enter default judgment 'ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith

disregard for those orders.'" Id. (quoting Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir.1986)).

A district court also has broad discretion to award sanctions pursuant to its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. Again, however, "[d]ismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." Id.

### B. Spoliation of Evidence

"Spoliation is defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." Tesoriero v. Carnival Corp., 965 F.3d 1170, 1184 (11th Cir. 2020) (citation and quotation marks omitted). "In some circumstances, a party's spoliation of critical evidence may warrant the imposition of sanctions." Id. (citation and quotation marks omitted). "Because spoliation is an evidentiary matter, federal law governs the imposition of spoliation sanctions." Id. (citation and quotation marks omitted). Although federal law governs, "the Court may look to state law for guidance to the extent that it is consistent with federal law." Wilson v. Wal–Mart Stores, Inc., No. 5:07–cv–394–Oc–10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted). Florida law on spoliation is consistent with federal law. See FTC v. Nationwide Connections, Inc., No. 06–80180–CIV, 2007 WL 4482607, at *1 (S.D. Fla. Dec. 19, 2007) (stating that "Florida based federal courts look to Florida law for guidance

on when to impose sanctions for spoliation.").

Rule 37(e) governs the preservation of electronically stored information ("ESI") and sanctions for spoliation of ESI. Fed. R. Civ. P. 37(e). Rule 37(e) provides, "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court ***may*** (1) upon finding prejudice from the loss, order measures no greater than necessary to cure the prejudice or (2) "**only** upon finding that the party acted with the intent to deprive another party of the information's use in the litigation" either presume that the lost information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable to the party, or dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e) (emphasis added).

While sanctions for spoliation of ESI are available only under Rule 37(e), sanctions for spoliation of tangible evidence can be imposed pursuant to the Court's inherent authority. See Living Color Enter., Inc. v. New Era Aquaculture, Ltd., 14-CV-62216, 2016 WL 1105297, at *4, n.2 (S.D. Fla. Mar. 22, 2016) (recognizing that the advisory committee notes to Rule 37(e) foreclose reliance in inherent authority or state law to determine when certain measures should be used for spoliation of ESI, but separate legal analysis based on inherent authority continues to exist for spoliation of tangible evidence). Similar to sanctions for spoliation of ESI under Rule 37(e), sanctions for spoliation of tangible evidence include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Oil Equip. Co. Inc. v. Modern Welding Co. Inc., 661 Fed. App'x. 646, 652–53 (11th Cir. 2016) (quoting Flury, 427 F.3d at 945).

4

The burden is on the party seeking spoliation sanctions to prove "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." Walter v. Carnival Corp., No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing Floeter v. City of Orlando, 6:05–cv–400–Orl–22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007)). Even if all three elements are met, "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absences of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." Id. at *2 (quoting Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997)). "When deciding whether to impose sanctions, a number of factors are relevant: '(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed.'" Tesoriero, 965 F.3d at 1184 (quoting ML Healthcare Servs., LLC v. Publix Super Mkts., Inc., 881 F.3d 1293, 1307 (11th Cir. 2018)).

## II.  DISCUSSION

### A. Failure to Produce/Investigate Text Messages from Plaintiff's Former Android Phone and Daughter's Phone

Defendant's first sanctions motion seeks dismissal with prejudice due to Plaintiff's failure to search for and produce text messages allegedly located on Plaintiff's former cell phone and Plaintiff's daughter's cell phone. (Dkt. 134)

When Defendant took Plaintiff's second deposition on October 7, 2019, Defendant

inquired about certain conversations between Mr. Staple and Plaintiff and Mr. Staple and his daughter that were revealed to Defendant after inspection of Mr. Staple's cell phone. (Dkts. 134-2, 134-3) Several text messages from these conversations are missing from Mr. Staple's phone. (Id.) Defendant contends that Plaintiff has in her possession the portions of these missing conversations, which conversations were allegedly responsive to Defendant's March 23, 2018 discovery requests and should have been produced. Specifically, during Plaintiff's October 3, 2019 deposition, Plaintiff testified that her former Android cell phone—the phone that might have contained the missing messages between Plaintiff and Mr. Staple—was in a kitchen drawer at home and that she never inspected it for relevant messages responsive to Defendant's March 23, 2018 production requests. (Dkt. 212 at 245:23–246:5) She also testified that her she never inspected her daughter's phone for relevant messages to or from Mr. Staple. (Id. at 316:3–19)

On October 11, 2019, Plaintiff signed an Errata Sheet which *inter alia* corrected her deposition testimony with regard to her former Android phone. (Dkt. 134-9) Relevant to the Motion, Plaintiff altered her response to a question about what type of phone she had prior to her current iPhone 6. Originally, she testified, "I have no idea, other than it was Android instead of Apple." (Dkt. 212 at 245:13–14) Her updated response is:

> The cell phone I am now using was activated in April 2016. The phone I had used previously (an Android) was broken and discarded in April 2016 while I was out of town. I replaced the Android with a disposable phone that I subsequently dropped a few days later and broke, so I got an iPhone 6, the phone I use now. I kept the disposable phone in my kitchen drawer, and that is the phone I checked for texts to/from Desmond prior to my first deposition. There were no texts.

(Dkt. 134-9) Additionally, she altered the testimony that she believed her former Android phone was "at home" in her kitchen drawer to reflect that the "Android was discarded."

(Id.)

As a threshold matter, Defendant seeks for the Court to strike Plaintiff's Errata Sheet, contending that Plaintiff's substantive changes to her testimony are improper and that her "story cannot possibly be true" because her cell phone records show no interruption of text messaging in April of 2016, the month in which she claims she broke her phone and switched to a disposable phone. (Dkt. 134 at 7–8) Rule 30(e) of the Federal Rules of Civil Procedure allows a deponent to make "changes in form or substance" by signing a statement listing the changes and the reasons for making them. Fed. R. Civ. P. 30(e)(1). Defendant contends that the Eleventh Circuit limited the kind of substantive changes allowable under Rule 30(e) in Norelus v. Denny's, Inc., in which the court held that the submission of a massive, 63 page errata document which altered the deponent's testimony in 868 ways was improper, as it "rendered the eight days spent on [plaintiff's] deposition a waste of time and money to say nothing of the time the attorneys were forced to spend on the issues created by the document itself." 628 F.3d 1270, 1282 (11th Cir. 2010). However, Norelus is factually inapposite. Unlike the errata sheet in Norelus, which the Court described as "novella-length" and which made "a slew of material changes" to the plaintiff's deposition testimony, id. at 1281, here Plaintiff's Errata Sheet is two pages long and makes ten total changes. (Dkt. 134-9)

With regard to the changes concerning Plaintiff's testimony about the former Android phone, the Court finds that Plaintiff's alterations were corrective and within the scope of Rule 30(e). It is not unfathomable that Plaintiff would have been mistaken as to which old, unused phone was located in her kitchen drawer from three years prior or that she would have forgotten about a disposable phone that she used temporarily after her

former Android phone broke. Nor does it appear that these corrections are necessarily a fabricated, impossible story to conceal the alleged discovery violation where, as here, Plaintiff's cell phone records reveal no interruption in communication during April of 2016. As suggested in Plaintiff's response, she could have transferred her phone number to the disposable phone in April, which would have avoided interruption in service. (Dkt. 150 at 5) There is no evidence that she did not do so. As such, absent evidence that the assertions are demonstrably false, the Court declines to strike the Errata Sheet. Defendant may be able to use the Errata Sheet corrections to impeach Plaintiff's credibility at trial, depending upon the questions asked and answers given at trial.

The Court next turns to the alleged discovery violations. Defendant's production requests seek documents and messages relating to Plaintiff's attempts to locate her husband and communications that Plaintiff or anyone acting on her behalf sent to or received from Desmond Staple. (Dkt. 134-6) Based on Plaintiff's deposition testimony, messages to or from Mr. Staple located on Plaintiff's daughter's phone would appear to be outside of the scope of these production requests. Plaintiff testified that she did not use her daughter's phone to contact her husband in March of 2016 and did not discuss with her daughter any attempts to contact her husband. (Dkt. 212 at 250:21–251:3) Plaintiff further explained that at some point she purchased a new phone for her daughter and the old device was then given to her younger son after its memory had been deleted. (Id. at 264:11–265:21, 315:18–316:15) Based upon this testimony, it does not appear that the daughter's phone was being used by Plaintiff or on Plaintiff's behalf to locate or communicate with Mr. Staple. Thus, there is no reason to believe that it contained any information responsive to Defendant's requests, such that it was sanctionable for Plaintiff

8

not to search the device, as any communications thereon would appear to be outside the scope of the requests for production. To the extent that Defendant believed relevant discoverable communications might be found on Plaintiff's children's phones, it could have made a more specific request for such information.

With regard to her former Android phone, Plaintiff explains in her Errata Sheet that she discarded this device and that she has already checked the disposable phone in her possession for information responsive to Defendant's requests for production, and no such information was located on that phone. (Dkt. 134-9) Thus, based on these representations, the Court finds no discovery violation occurred for failure to check a phone that Plaintiff did not possess.

The Court further declines Defendant's alternative request to compel production of these phones and reopen discovery. Again, based on the representations in Plaintiff's Errata Sheet, Plaintiff does not possess the relevant device and she has checked the disposable phone that she does possess for responsive communications and there are none. As such, there is nothing for the Court to compel other than the disposable phone, which Plaintiff **SHALL PRODUCE IMMEDIATELY IF SHE HAS NOT DONE SO ALREADY.** No further reopening of discovery is warranted. The Court finds, however, that there have been no discovery violations that warrant the severe sanction of dismissal. Thus, Defendant's first sanctions request is due to be denied.

### B. Spoliation of Evidence – Missing Emails, Text Messages, Note, and Bible

Defendant's second sanctions motion seeks dismissal with prejudice due to Plaintiff's alleged spoliation of both ESI and tangible evidence, including deleted text

message strings and individual messages from Mr. Staple's phone, Plaintiff's access to Mr. Staple's Yahoo! Mail account, and the disappearance of a handwritten "note" and Bible present in the car in which Mr. Staple was found. (Dkt. 170) In the alternative to dismissal, Defendant requests that the Court impose an adverse inference when considering this matter on summary judgment and/or at trial through an adverse jury instruction that the missing note was a suicide note and that Mr. Staple's laptop, cell phone, and email contained information establishing that his manner of death was suicide. (Id.)

The Court first addresses Defendant's motion for leave to reply to Plaintiffs response to its second sanctions motion, (Dkt. 196), which Plaintiff opposes. (Dkt. 198) Defendant contends that a reply is warranted to address the "omissions of testimony, misrepresentations of Northwestern Mutual's arguments, and factually inaccurate statements" made in Plaintiff's response. (Dkt. 196) "The purpose of a reply brief is to rebut any new law or facts contained in the opposition's response to a request for relief before the Court." Bernath v. Seavey, No. 2:15-CV-358-FTM-99CM, 2017 WL 1743285, at *3 (M.D. Fla. May 4, 2017) (quoting Tardif v. People for the Ethical Treatment of Animals, 2011 WL 2729145 (M.D. Fla. July 13, 2011)). Rather than rebut new law or facts, Defendant seeks to further argue its sanctions motion in a reply. There has been ample briefing on the issue of spoliation in this case, and, in light of the extensive record of evidence provided, the Court requires no additional briefing to resolve the issues raised in Defendant's sanctions motion. As such, the Motion for Leave to File a Reply, (Dkt. 196), is **DENIED**.

### i.  Missing Text Messages

Defendant claims that Plaintiff deleted the following from Mr. Staple's phone: (1) 24 complete text message strings; (2) select messages between the Mr. Staple and Sharon Unruh; (3) select messages between Mr. Staple and Rudy Simpson; (4) a complete text message string between Mr. Staple and Plaintiff; (5) a complete text message string between Mr. Staple and his daughter; (6) a complete text message string between Mr. Staple and his mother; and (7) a complete text message string between Mr. Staple and his sister. (Dkt. 170 at 4–11)

"When confronted with a spoliation claim [involving ESI], the Court must first make some preliminary determinations under Rule 37(e) before turning to subsections (e)(1) or (e)(2)." Chi Nguyen v. Costco Wholesale Corp., No. 9:19-CV-80393, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020) (alteration in original) (quoting Living Color Enter., Inc, 2016 WL 1105297 at *4). First, the Court must address whether the allegedly spoliated ESI should have been preserved. Id. Second, the Court must inquire as to whether the allegedly spoliated ESI was lost because the alleged spoliator failed to take reasonable steps to preserve it. Id. The Rule is "inapplicable when the loss of information occurs despite the party's reasonable steps to preserve. For example, the information may not be in the party's control. Or information the party has preserved may be destroyed by events outside the party's control. . . ."  Fed. R. Civ. P. 37(e) Advisory Committee Note to 2015 Amendment.[1] Finally, the Court must examine whether the ESI cannot be restored or replaced through additional discovery. Chi Nguyen, 2020 WL 413898, at *2. If any of

---

[1] While "not binding," Advisory Committee Notes "are nearly universally accorded great weight in interpreting federal rules." Horenkamp v. Van Winkle and Co., 402 F.3d 1129, 1132 (11th Cir. 2005) (quotation omitted).

these questions are answered in the negative, then the Court need proceed no further, and a motion for spoliation sanctions or curative measures must be denied. Id.

Defendant first asserts generally that "***at least 24 complete text message strings*** created from March 6, 2016 through March 20, 2016 are missing and had been deleted from Desmond Staple's cell phone. There is no legitimate explanation for the non-existence of these text messages other than Plaintiff deleting them." (Dkt. 170 at 5) (emphasis in original) However, assuming without deciding that the message strings were deleted, Defendant provides no explanation for why any missing strings from between March 6th and March 14th could **only** have been deleted by Plaintiff and not by Mr. Staple prior to his overdose. Mr. Staple was found unconscious in his car in a Walmart parking lot on March 14, 2016, and his phone was turned back on by first responders around 4:30 pm. At this time, approximately 68 text messages flooded in and were "received" by Mr. Staple's phone. (Dkt. 170 at 9) Plaintiff first took possession of Mr. Staple's phone at some point after this discovery, while Mr. Staple was being treated in the hospital. (Dkt. 212 at 252:23–253:5) There is no dispute that prior his being discovered, Mr. Staple was in possession and control of his cell phone. Adam Sharp, the forensic expert who examined Mr. Staple's cell phone, could not definitively determine that missing texts were, in fact, deleted and could not determine when any such deletions occurred. (Dkt. 216 at 120:21–23:11, 158:4–10) Defendant cannot meet its burden of proving that these messages were deleted by Plaintiff at a time when Plaintiff had a duty to preserve them, and not by Mr. Staple at a time when the phone was in his possession, prior to his overdose. Moreover, the relevance of these missing text strings is not clear from Defendant's motion. Defendant does not state who these text message conversations

were with or why their absence is prejudicial to its defense.

Defendant next points to six specific conversations with missing messages that it contends are relevant to this case: (1) the conversation between Mr. Staple and Sharon Unruh, (2) the conversation between Mr. Staple and Rudy Simpson, (3) the conversation between Mr. Staple and Plaintiff, (4) the conversation between Mr. Staple and his daughter, (5) the conversation between Mr. Staple and his mother, Eunice Wilson, and (6) the conversation between Mr. Staple and his sister, Charmaine Burney. (Dkt. 170 at 5–9) These missing messages can be divided in two distinct categories—messages sent or received before 4:30 p.m. on March 14, 2016 and messages received on or after 4:30 p.m. on March 14, 2016. As to the first category, the same issue discussed above applies. This includes all the missing messages between Mr. Staple and Unruh, twenty missing messages between Mr. Staple and Simpson, five missing messages between Mr. Staple and Plaintiff, eight missing messages between Mr. Staple and his daughter, eight missing messages between Mr. Staple and his mother, and eight missing messages between Mr. Staple and his sister. (Dkts. 170-3, 170-5, 170-6, 170-7, 170-8, 170-9) All of these messages were sent or received **prior** to Mr. Staple being found unconscious on March 14, 2016 at 4:30 pm, while Mr. Staple was still in possession of his cell phone. Without any evidence of when these messages were deleted, the Court cannot conclude that Plaintiff deleted the messages.

As to the second category of missing messages—those sent to the Mr. Staple on or after 4:30 p.m. on March 14, 2016 when the phone was turned back on by first responders—Defendant correctly points out that these could not have been deleted by Mr. Staple because they were not received until after his overdose. This category includes

two messages sent from Rudy Simpson to Mr. Staple at 4:30 and 4:31 p.m. on March 14, 2016, two messages sent from Plaintiff to Mr. Staple at 4:30 p.m. on March 14, 2016, two messages sent from Plaintiff's daughter to Mr. Staple at 4:30 p.m. on March 14, 2016, three messages sent from Mr. Staple's mother to Mr. Staple at 4:30 or 4:31 p.m. on March 14, 2016, and seven messages sent from Mr. Staple's sister to Mr. Staple at 4:30 or 4:31 on March 14, 2016.  (Dkts. 170-5, 170-6, 170-7, 170-8, 170-9)

These messages clearly could not have been deleted by Mr. Staple. The Court notes, however, that the forensic expert could not definitively conclude that any of these missing messages were, in fact, deleted and could not conclude that the messages were deleted by Plaintiff. (Dkt. 216 at 120:21–23:11) Despite providing AT&T records indicating that these messages were "received" by Mr. Staple's phone, Defendant does not provide, and the forensic expert could not speak to, what the AT&T records actually prove. (Dkt. 170-1; Dkt. 216 at 121:3–5, 161:10–16) No other expert has explained the meaning of the records. Plaintiff plausibly suggests that the missing messages may have merely failed to download onto Mr. Staple's cell phone during the surge of messages that poured in when the phone was turned back on. (Dkt. 186 at 20) However, even assuming that the messages were in fact deleted by Plaintiff, as Defendant proposes, Defendant has failed to meet its burden of establishing spoliation because it cannot establish that they were deleted at a time when Plaintiff had a duty to preserve them.

Rule 37(e) "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) Advisory Committee Note to 2015 Amendment. The test for determining whether there was a duty to preserve evidence is whether litigation was "pending or reasonably foreseeable" when the spoliation

14

occurred. <u>Oil Equip. Co. Inc. v. Modern Welding Co. Inc.</u>, 661 F. App'x 646, 652 (11th Cir. 2016)[2]; <u>Graff v. Baja Marine Corp.</u>, 310 F. App'x 298, 201 (11th Cir. 2009). "To be reasonably foreseeable, litigation must have been contemplated—mere awareness of potential liability is insufficient to trigger a duty to preserve evidence." <u>Jetport, Inc. v. Landmark Aviation Miami, LLC</u>, No. 1:16-CV-23303-UU, 2017 WL 7732869, at *3 (S.D. Fla. July 24, 2017) <i>(</i>citing <u>Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC</u>, 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011). "If Plaintiff destroyed evidence while considering or intending to engage in litigation, then, he committed spoliation." <u>Carroll v. ATA Retail Servs., Inc.</u>, No. 114CV00747ELRGGB, 2016 WL 8417377, at *17 (N.D. Ga. Jan. 8, 2016), <u>report and recommendation adopted,</u> No. 1:14-CV-00747-ELR, 2016 WL 8417376 (N.D. Ga. Mar. 30, 2016), <u>aff'd,</u> 747 F. App'x 762 (11th Cir. 2018).

Defendant contends that Plaintiff's duty to preserve Mr. Staple's text messages arose the moment that Mr. Staple was found unconscious in his car by first responders—two days prior to his death—because it was at this time that Plaintiff told first responders that Mr. Staple had expressed suicidal ideation. (Dkt. 170 at 19–20) Defendant contends that an immediate duty to preserve is further supported by Plaintiff's conversation with Deanne West, an attorney with whom Mr. Staple previously shared office space, while Mr. Staple was in the hospital. (<u>Id.</u>) Retention of counsel is a factor that courts consider in support of a finding of anticipation of litigation. <u>See</u> <u>Cohn v. Guaranteed Rate, Inc.</u>, 318 F.R.D. 350, 354 (N.D. Ill. 2016).

The Court declines to find under the factual circumstances established to date, that Plaintiff was reasonably anticipating litigation concerning Mr. Staple's life insurance

---

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. <u>See</u> 11th Cir. R. 36-2." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000).

proceeds from the moment the phone came into her possession. In her deposition, Plaintiff testified that she communicated with Deanne West while she was at the hospital regarding how to respond to incoming, business-related text messages to Mr. Staple's phone. (Dkt. 212 at 255:24–56:20) West testified that she does not recall any questions Plaintiff asked her after Mr. Staple passed away, but if any such conversations were had, they would be privileged. (Dkt. 208 at 52:21–53:7) However, she testified that she would not have represented Ms. Staple in this matter because she does not handle this type of litigation. (Id. at 66:6–17) Plaintiff also testified that West never represented her. (Dkt. 58-12 at 183:7–9) Thus, while retention of counsel may show a party's anticipation of litigation, there is no evidence that Plaintiff retained West or sought her legal counsel in contemplation of this litigation. Moreover, Mr. Staple was not yet deceased at the time in which Defendant would have the Court impose a duty to preserve evidence on Plaintiff. The Court cannot reasonably find that Plaintiff anticipated the instant dispute with Mr. Staple's life insurance provider—and thus was under an obligation to preserve all text messages sent to his phone prior to his passing—as the death benefit was not even at issue at the time.

Of course, absent a finding that Plaintiff had an obligation to preserve the texts from the moment Mr. Staple's cell phone came into her possession at the hospital, Defendant's spoliation Motion as to the remaining missing text messages fails for the same reason it fails as to the other messages in question: Defendant cannot establish **when** any messages were deleted and, thus, cannot establish that they were deleted after the duty to preserve arose. Thus, even were the Court to find that Plaintiff did have the obligation to preserve Mr. Staple's messages as early as March 16, 2016—the day

she submitted a claim for benefits under his life insurance policy—Defendant cannot establish that any of the missing messages it claims are critical to its case were deleted by Plaintiff on or after that date and not before.

Moreover, Defendant's motion fails for an additional reason. Even if the Court were to find that deletion of the messages could be ascribed to Plaintiff and that they were deleted at a time when she was under an obligation to preserve them, there is nothing to suggest that these missing messages were adverse to Plaintiff's case such that their absence should be deemed presumptively prejudicial to Defendant. Defendant highlights the recovered messages from Mr. Staple's conversation with Unruh as evidence of the "type of damming messages Plaintiff was trying to hide . . . ." (Dkt. 170 at 6–7)  However, unlike the messages from the Unruh conversation, sent from Mr. Staple to Unruh, which reveal insight into Mr. Staple's state of mind shortly before he was found unconscious and support Defendant's theory of suicide, all of the missing messages from after 4:30 p.m. on March 14, 2016 that Defendant suggests Plaintiff deleted were **sent to** Mr. Staple's phone. Thus, while it is possible that the messages could have revealed the senders' concerns for Mr. Staple's well-being, Defendant cannot establish, and the Court certainly cannot conclusively presume, that these missing messages were unfavorable to Plaintiff or would display Mr. Staple's suicidal intent in any way. Therefore, there is insufficient evidence in this record for the Court to find sanctionable spoliation as to any of the missing text messages.

### ii.  Missing Emails

Defendant also claims that there has been spoliation regarding Mr. Staple's emails. (Dkt. 170 at 11–14) However, the Court would note that Defendant does not actually point

to any evidence of missing or spoliated emails. Rule 37(e) "applies only when [the allegedly spoliated] information is lost." Fed. R. Civ. P. 37(e) Advisory Committee Note to 2015 Amendment. Defendant's complaints with respect to the emails are that Plaintiff accessed Mr. Staple's account, thestaplegroup@yahoo.com, after Mr. Staple's death, viewed messages, and changed the password to his account. (Dkt. 170 at 11) However, the forensic expert expressly found from his examination of the computer that there was no evidence of any intentional deletions. (Dkt. 216 at 61:5–21, 165:15–166:14) Defendant offers no evidence of Plaintiff's specifically deleting emails while accessing that account. The absence of any evidence that any emails were altered or destroyed by Plaintiff is fatal to Defendant's claim of spoliation.

Nonetheless, Defendant contends that the emails are "lost" because they are unavailable to it due to Plaintiff's refusal to sign a consent form permitting Yahoo! to provide Defendant with the access to the emails in that account. (Dkt. 170  at 23–24) However, Plaintiff did not "refuse" to sign Defendant's proffered consent forms; rather, she objected to the language of the consent forms and stated that she was willing to sign consent forms that were "factually accurate and legally sound."[3] (Dkt. 170-15) No timely

---

3 To provide context, the consent forms proffered by Defendant required Plaintiff to state that she was "the owner" of Mr. Staple's email accounts and that, as owner, she provided consent under 18 U.S.C. § 2702(b)(3) to produce their contents. (Dkt. 170-15 at 9) Section 2702(b)(3) provides an exception to the prohibition against a provider's disclosure of customer communications or records when it obtains the "lawful consent of the originator or an addressee or intended recipient of such communication . . . ." Id. Plaintiff's counsel expressed a concern that Plaintiff was not "the owner" of the email accounts and thus, did not appear to have authority to execute the consents as written. (Dkt. 170-15 at 3) Specifically, Plaintiff's counsel wrote:

We disagree that 18 U.S.C. sec. 2702(b)(3) accurately describes Cheryl Staple. She is not the "originator" of Desmond Staple's emails and she only potentially might be "an addressee or intended recipient" of some of Desmond Staple's emails. . . .

If Northwestern Mutual is aware of a relationship between Cheryl Staple and Desmond Staple's email accounts, or a status Cheryl Staple has that enables her to provide consent to access Desmond Staple's email accounts, please provide proof of this relationship

motion to compel her signature on such forms was filed, and motions aplenty have been filed. Thus, the Court finds that there is insufficient evidence to make a spoliation finding as to the Yahoo! emails. Moreover, to the extent that Defendant takes issue with Plaintiff's untimely disclosure of Mr. Staple's laptop and cellphone, (Dkt. 170 at 24–25), Plaintiff has already been sanctioned for her improper withholding of these items by the Court. (Dkt. 94) Further sanctions are unwarranted.

### iii. Missing "Note" and "Bible"

Having determined that there is no spoliation as to the missing ESI, the Court turns to the allegations of tangible evidence spoliation. Prior to the reopening of discovery in this matter, Defendant took issue with a piece of paper with red handwriting visible in the photographs of the car in which Mr. Staple was found (the "Note"). (Dkt. 54) The Note has never been produced. Defendant first suggested in its Motion to Dismiss for Fraud on the Court that the Note was a suicide note written by Mr. Staple before his overdose. (Dkt. 54) Defendant suggested that this theory was bolstered by Plaintiff's alteration of her responses to Defendant's requests for production. (Id.) Specifically, Plaintiff was asked to produce any "suicide notes" and she responded on May 23, 2018 that she was "unaware that one exists." (Dkt. 54-52 at ¶ 57) However, four months later, on September 14, 2018, Plaintiff amended her response to remove the statement that she was "unaware that one exists." (Dkt. 54-53 at ¶ 57) At the hearing on Defendant's Motion to Dismiss for

---

and/or status and support for it being legally sufficient for Cheryl Staple to provide consent to accessing Desmond Staple's email accounts.

The undersigned reiterated to you during our August 12, 2019 phone call our office's intent to fully cooperate with your office regarding executing the necessary consents. However, consents that are legally sufficient and factually accurate need to be provided to Cheryl Staple for execution.

(Id.)

Fraud on the Court, the Court questioned Plaintiff's counsel on the missing Note and the amended discovery answers, and it did not find credible Plaintiff's explanation for why she changed her discovery answers. (Dkt. 103 at 79:10–14) However, this subtle change in Plaintiff's discovery answers coupled with the missing document is insufficient to persuade the Court that this document was, in fact, a suicide note, such that the Court can find that Defendant is prejudiced by its absence or impose an adverse inference. Again, Plaintiff's shifting responses and dubious explanations may be fertile ground for impeachment at trial, but they do not warrant an adverse inference or the more extreme sanction of dismissal with prejudice.

Other than Defendant's suspicions based on the altered discovery response, there is no evidence of what writing this piece of paper actually contained—it could have been a handwritten grocery or to-do list just as easily as it could have been a suicide note. Moreover, no person who viewed the contents of the car testified that he or she saw a suicide note. To the contrary, Rudy Simpson, the person who photographed the car and its contents, testified that he would have remembered seeing a suicide note, and he did not see one. (Dkt. 205 at 108:18–22, 109:5–16)

Additionally, Defendant has not proffered sufficient evidence to persuade the Court that Plaintiff, and not some other individual, is responsible for the destruction of the Note. Plaintiff denies knowledge of the document or ever instructing anyone to remove or destroy it. (Dkt. 212 at 19–21) There is no evidence that the Note ever made it into the box of car contents that came into Plaintiff's possession. Plaintiff maintains that Simpson is the individual who boxed up the car's contents. (Id. at 271:11–12) Simpson's testimony on this issue is not very helpful, as he has no specific recollection of photographing the

20

car or boxing up the contents three years prior. (Dkt. 205 at 110:23–13:10) However, he stated during his deposition that, had he been asked to box up the car's contents for Plaintiff, he would have done so. (Id. at 113:4–7) What is clear is that numerous other individuals had access to the vehicle, and Simpson concedes that he might have removed the contents of the car, despite not recollecting. Thus, Defendant has not proffered sufficient evidence to contradict Plaintiff's reasonable explanation that the Note never made its way into the box in her possession, such that the Court can hold her responsible for the now missing document. See Bashir v. Amtrak, 119 F.3d 929, 932 (11th Cir. 1997) (affirming denial of an adverse inference request as to missing evidence when the loss of the evidence was "wholly unexplained").

The Court cannot find that Plaintiff destroyed the Note or that the Note was, in fact, a suicide note, such that it would be appropriate to provide the jury with the adverse inference instruction Defendant requests, certainly not on the record as it now stands.

Defendant also seeks spoliation sanctions in connection with another item visible in the photographs of Mr. Staple's car's contents—a missing Bible. The Bible was not produced in discovery, and Plaintiff's testified that Mr. Staple was buried with it. (Dkt. 212 at 274:9–11) Defendant cannot establish that the Bible is critical evidence to its case. Defendant vaguely suggests that the Bible's evidentiary value lies in the fact that it contained a piece of loose-leaf paper tucked inside and that the page that was bookmarked would provide insight into Mr. Staple's state of mind prior to his overdose. (Dkt. 170 at 15, 16 n.17) However, Defendant's argument concerning possible prejudice resulting from its inability to examine the Bible is highly speculative. On this record, the Court cannot determine that the Bible was critical or even relevant evidence needed to

support Defendant's theory of the case.

### III.   CONCLUSION

For the reasons stated, the Court hereby **ORDERS** as follows:

1.  Defendant's Motion for Sanctions due to Discovery Violations, (Dkt. 134) is

    **DENIED**.

    a.  Plaintiff **SHALL IMMEDIATELY (within three (3) days of the date
        of this Order)** produce to Defendant the broken, disposable phone
        that she has testified is in her kitchen drawer if she has not done so
        already.

2.  Defendant's Motion for Sanctions due to Spoliation, (Dkt. 170), is **DENIED**.

3.  Defendant's Motion for Leave to File a Reply, (Dkt. 196), is **DENIED**.

**DONE and ORDERED** in Tampa, Florida, this 30th day of September 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record
Any Unrepresented Party